uh good morning will you please come and speak with us thank you your honor from uh removing my mask that's all okay very good uh good good morning chief judge prior judge brasher judge alderman uh may it please the court the uh case that uh we have here goes back 15 years it was filed 15 years ago 20 to 55 uh about eight years ago and i think an opinion uh judge prior you may authored a the court remanded for a merits determination of one claim relating to uh ineffective assistance of counsel in the plea stage of the case so we've been waiting a long time to try to get resolution of that issue there's been a lot of uh additional litigation filed but i think that the certificate of appealability does really focus in on what's really important is there was there a claim pled that it was conclusively refuted by the record and i think that the fact that the government cites in support of its position only cases really that in terms of adverse effect on conflict of interest only cases in which there were evidentiary hearings and specific findings that for you know there were specific reasons why some other other factor rendered uh essentially invalidated the adverse effect that that is a such is the most strong showing you can have in a case that this is a case that should have an evidentiary hearing the underlying issues are of have you alleged enough about prejudice to get an hearing we we feel that under kyler we have definitely we've sought to to show a great deal of prejudice in terms of what the anticipated plea deals were we we showed the record shows what the other plea deals in the case were right right but and correct me if i'm wrong but i thought that some of those plea deals were about the same as what your client was offered when he had conflict free counsel well i mean as as i under recall when this 2255 was filed everybody was were generous for people who were completely overwhelmed with evidence uh the the the head of the operation whose uh whole operation millennium operation was out of his office he got a plea deal that was extraordinarily uh lighter uh the case against ochoa was very very the extradition extradition affidavit ultimately turned out to be as ochoa indicated let me ask you first so and maybe i'm wrong about this but i have in my notes that um armando valencia received a sentence of 20 years romero vanoy ramirez received a sentence of 24 years um so these folks did not get favorable treatment compared to ochoa am i wrong about that they did not those uh those two uh did not vanoy again is a member had head of the paramilitary in in venezuela in uh in colombia there were factors very specific to these cases that made them extraordinarily different that that's why we we certainly believed that we could show in fact the offers that were presented to him to to ochoa by the attorney the attorney was telling him oh yes with with the making this deal we can get you a three to five we can get you five years all you have to do is buy in so i mean that in and of itself wouldn't a necessary precondition to taking a plea be that he was actually guilty well yes but didn't he allege didn't you allege in the 2255 several times and in a pamphlet that was quoted in the 2255 that he was actually innocent there was a sort of a publicity campaign with regard to the pamphlet uh a publicity campaign to the effect that uh he was not he was innocent in in colombia that is to in relation to that but the 2255 at page 95 96 says that he was quote being framed for charges of which he was innocent end quote and then it says that the soy inocente pamphlet accurately laid out the truth it laid out the truth of the extradition warrants false statements which again has been proven to be true but the primary claim my understanding of the 2255 claim of innocence was uh as to this jurisdictional nexus to the united states i i think that that was a more of a legal issue the other issue is again whether the the tapes were undisputed for the most part and we did not even move to suppress the tapes so the question again it was one of these questions of does this qualify as a conspiracy didn't you allege in the um brief in this court and in the 2255 that the bernal land deal was just a totally legitimate real estate transaction from the perspective of mr ochoa and if that's true what kind of cooperation could he have given in response to miss van vliet's letter there was no question that he was present in the office when these uh people were transacting uh or talking about transacting the but he didn't know it was drugs oh there's no question that he knew they were involved in drugs that's not what the 2255 says right well no i i the again the 2255 says that the bergens only land deal was not sufficient to convict him i think that's what the opinion on uh affirming it was a two-to-one decision affirming is but it also says that that's because he believed that it was a legitimate land deal and that he had no reason to believe it had to do with drugs and a drug debt right i i don't know that that is a a really a significant part of of the case the the reason why the bergens only land deal it was crucial in that it was the entree in other words the theory of the government's case is that he does this he does this uh transaction in which the bernal owes him money he goes out he goes to bernal's office to try to hover around to see whether he's going to get paid uh that's the question does he go beyond hovering around to see where he gets paid those those issues though of whether somebody goes to trial whether somebody makes alternative claims in a 2255 they don't affect kyler at all i mean most of the kyler cases people did also what about londonio you talk a lot about londonio in the 2255 in the opening brief in this court the government reads the coa as precluding any reliance on the londonio representation and in reply you appear to abandon londonio without saying so directly so i just wanted to know what your view of that was right claim six which is the the claim um addresses both the bergens only uh component of the of the conflict which we believe is one of the most egregious assume there's a conflict on bergens only right with regard to it also goes forward and makes on part b talks about londonia but as much as it talks about there being a conflict in londonia as the coa order points out it doesn't really pinpoint the time and how it relates but what it does do is relate facts and what the case over the next 15 years did do is related we got finally more information it was finally conceded during this 2255 that perez did represent londonio during a certain period of time we didn't even have that now maybe we should have amended and certainly maybe i should have amended the coa but i'm not trying to amend the coa i'm not trying to claim that if there's no conflict as to bergens only then then you can still grant relief i'm i'm resting with solidly within the coa but the facts relating to london including all the facts that over the next you know the gomez affidavit all of those facts do inform the adverse effect analysis which again does not require us to show that uh a what the offer was i think ruffin v kemp is just so clear here let's let's say that there was a conflict okay why are we to believe based on what you've alleged in your 2255 motion that you've alleged enough for if your client's protestation all along was that he was innocent why is there any reason to believe that even with conflict free counsel he would have there's even a reasonable probability of of him pleading guilty he he later has conflict free counsel and he does and when given an offer refuses to plead guilty why are we to think that there's any there's enough here to allege prejudice i i think that we we're not proceeding because of the coa we cannot proceed on trying to show strict one prejudice we simply can't so i i can answer your question even though i seem to be trying i i would be exceeding the coa to try to do that right you have to show adverse effect i have to show adverse effect and the precedent of this circuit which has never been in in the baddie b balkan and in ruffin v kemp is clear that the prejudice is when the attorney and he's the only attorney that ochoa has in 1999 and for the the first period of the negotiation the word negotiations would occur with with the united states would the attorney does not engage in plea negotiations because of the conflict of interest and that's what ruffin v kemp says and and that is the prejudice and and in this case was that a case though and and this one of the things that is challenging i think about your situation is that this attorney was represented the client for so short a period of time um i mean what do you say about that your honor the he's the defendant's arrested in columbia in october of 1999 the first attorney who comes in as of 1999 is working on the case is this attorney he stays on at least through march of 2000 throughout all of that period he is working in direct opposition to the client's interest not even suggesting an offer to the government with regard to this case going to the client and trying to extort 30 million dollars for an illegal deal that is worse than ruffin uh well but was the lawyer in ruffin replaced the lawyer in ruffin uh was was was not replaced but right so i mean i guess i guess the thing that i'm just saying and and just you know this my hang-up i guess about about your position is that it seems like in any sort of run-of-the-mill case where there's a conflict a conflicted counsel appointed at the beginning and then gets replaced that that if your if your position in this case is correct then that's an ineffective assistance of counsel claim there needs to be a reverse conviction yeah what what differentiates your situation from just the typical situation where someone gets appointed and they represent someone from a year then they find out oh my gosh i've got a conflict um and they get replaced judge i've been doing this for 40 more than 42 years 44 years maybe i've never seen an attorney actively try to extort his client so in a manner to yeah right obviously the conflict here is really really bad right i mean you've alleged a lot of conflict i guess my point the adverse effect is okay let's i mean the conflict's really really bad but he represents the person for a year then he's replaced by conflict free counsel then they enter plea negotiations and the plea negotiations don't end up with the plea isn't that all of the cases that engage in that analysis do it after an evidentiary hearing to make sure we know the facts we make sure we know what happened mr quinone never even spoke with with met with mr ochoa for the whole two-year period before mr ochoa gets here to the united states his role was a very limited role it's the replacement of counsel concept is is not clearly applicable here is a long period of time involved and what i'm saying in answer to your question is that it does not open any floodgates to grant relief just an evidentiary hearing in this case okay you see save five minutes for rebuttal um let's hear from the government uh mr mendes mr chief judge and may please the court good morning my name is armando mendes and i am here on behalf of the united states the district court's decision should be affirmed because there was no conflict of interest and there was no adverse effect for almost 20 years a version of mr ochoa's claim that perez operated under a conflict of interest has been argued with the assistance of counsel and no conflict has been found first in november 2000 i mean i i'll just speak just speak for myself i mean if if the allegations are true that the lawyer was trying to shake down his client for a 30 million dollar bribe i can't imagine a greater conflict of interest than that so i just i don't get your point on the conflict of interest wrong well the the record conclusively as the magistrate judge found shows that mr perez was not operating under a conflict of interest based on mr ochoa's his own evidence that he proffered the transcripts that were produced in colombia by his brother show that mr perez was not operating under a scheme and i and i can point to certain parts of the record and so and so i looked at those transcripts and i guess this is an odd situation because there's been no evidentiary hearing on this particular claim but there has been the production of evidence um don't we have to read those transcripts sort of in the light most favorable to the person who's filing 2255 i don't know that you have that you have to read them in the light most favorable to mr ochoa but they have been read before they were read almost 20 years ago when the motion to dismiss the indictment and an evidentiary hearing was held in that in that case when he made the same claim that perez was operating under a conflict and the magistrate judge then judge turnoff held an evidentiary hearing and found there was no conflict and judge more agreed and then mr ochoa filed a motion for a new trial in a renewed motion to dismiss the indictment and again judge more mentioned this case was filed this habeas case was filed 15 years ago and magistrate judge maca lily looked at those same transcripts those same transcripts and said there was no conflict and so the judge more on de novo review and so the government's interpretation of those transcripts stands on the findings of the magistrate judges of findings and the district judge's findings mr ochoa's interpretations he stands alone in those and over the last 20 years this claim a has been litigated and litigated and no judge has found that there was a conflict of interest so what about the fact that judge maca lily appeared to use the wrong standard when reviewing the 22 55's allegations i think judge more addressed that in his in his rule 59 order so is that sufficient so in the order adopting the r&r he seems to again apply the wrong standard then there's a rule 59 where the standard is is reversed right now the at rule 59 the standard is skewed in favor of the party that won the government and against the 22 55 movement which as judge bradshaw pointed out is the reverse of what it was before the judgment and at that point judge more corrects the standard i i think he he disavows language that suggested that it was the wrong standard i i i uh i think the government agrees with judge more that it's not necessarily that the wrong standard was actually applied that there was language that seemed to suggest that the wrong standard was being applied but in order to determine whether an evidentiary hearing is appropriate in a habeas case it is the standard that mr ochoa needs to needs to allege uh reasonably specific facts which judge maca lily and judge more determined he hadn't and if his allegations are refuted conclusively by the record then an evidentiary hearing is not uh appropriate and that's exactly what judge maca lily and judge more uh found in the end so the you rely a lot on on mr quinones simultaneous representation of mr ochoa he alleges though that mr quinone was really just counsel and had really no contact with miss van vliet or mr ryan in the plea negotiation phase of the case and that by the time the conflict was revealed with mr perez that ship had sailed um aren't we required to take that allegation in the light most favorable to the allegation which is that quinone had nothing to do with plea negotiations well we know from the they discussed a preliminary extortion they discussed the extortion right well they discussed a plea of a plea negotiation and miss and miss van vliet said that in order for to consider a possible plea mr ochoa would have to would have to waive extradition would have to plead guilty and cooperate and that's in the record and it's an important point to make that mr quinone started representing uh according to a usa ryan's affidavit that was filed in the habeas case started representing mr ochoa from the moment he was charged in august 1999 and mr perez according to the record did not start representing ochoa until after that shortly after his arrest in october so mr quinones representation completely encompassed mr perez's uh representation because quinone was representing him from august 1999 to 2002 when his trial attorneys took over and so and so regarding mr quinone mr um ochoa if he truly wanted to cooperate and plead guilty he could have done it through mr quinone which he never alleges operated under any conflict of interest but he decided not to he continued to claim his innocence and and and proceeded and proceeded under that um and no deal was was ever going to be was it's unlikely any deal was going to be possible as long as mr ochoa continued to to suggest the extradition act uh and as alluded to previously claim his innocence um and challenging those affidavits miss um mr clue references um certain cases in terms of ruff ruffenbeck camp and and he mentions it in his reply brief and he mentioned it again today but that case is is very different from this case in that case the council was representing two defendants at the same time during the trial part of the of the of the case and he was negotiating a deal on behalf of one of his two uh um clients to testify against the other and so that case is completely uh in opposite to the case here and i think it was also suggested in terms of you know why why don't we why why wouldn't what's the harm of having another another evidentiary hearing and hearing this case um and i think there is there would be a significant harm i think that this as mr clue mentioned today this case this habeas case was first filed 15 years ago next year mr ochoa it's going to be 20 years since his conviction i think the the public has an interest in in in the finality of this conviction and so and not to mention the amount of judicial resources that have already been expended in this case from the magistrate judge almost 20 years ago having an evidentiary hearing the hundreds of pages that have been that have been litigated and argued with this claim over the years and so for those reasons obviously the the law in and of itself in terms of him not having alleged sufficient facts uh non-reasonably specific facts uh to to entitle him to an evidentiary hearing is one thing but also the principles of finality i think and the judicial research that have been expended is another reason let me ask you a question about the adverse effect prong so let's assume that that we believe that he did allege enough to to say that there's a conflict there was a conflict the adverse effect prong the way i see it it doesn't actually require him to show that there would have been a different outcome right um what what does it require him to show it requires him to show that his lawyer mr perez could have pursued a plausible alternative um route in this in this case in terms of plea negotiations and that he didn't or couldn't because he was conflicted so that's what it would require him to to show i mean if that's if that's all then i mean it seems like in any situation where there's a plea sort of a you know someone's representing two co-defendants for example and one is seeking a plea you know just the facts are rough um even if that lawyer is replaced by conflict-free counsel who then pursues a plea agreement it seems like that standard would be met i mean is that right no i don't think necessarily it's right your honor for example how isn't it well i think i think using the the facts of this case i in this case is represented by a conflict-free counsel as as is the case with quinone i don't think that that we can say that he was adversely affected in terms of his plea negotiations especially if mr perez's representation was completely encompassed by mr quinones as as as we've talked about uh today i i think and some of the cases that we cite in our brief point to the fact that the sixth amendment is is an affirmative right and so if a defendant is is represented by multiple lawyers as mr ochoa was in this case at one point he was represented by approximately 20 lawyers one of them is is is providing for argument's sake ineffective assistance and he's has a represent actual conflict we'll say one of the 20 has an actual conflict no dispute right i i think that for in the and the other ones are providing perfectly effective counsel when they're negotiating as is the case here i i don't think we can say and um that that mr ochoa should should be entitled to have a redo and i think some of the cases actually put it in that way i think for example the seventh circuit case the stoia case puts it that way that to do it to to read to the sixth amendment for example in that light it would be as if you're providing the defendant two bites of the apple and discern in terms of all right one of your a few of your lawyers are negotiating a plea deal or or not or you decide to go to trial and you end up not liking the result but one of your lawyers was providing for example ineffective it allows you two bites of the apple and i think that that's how some of the cases put it um and so uh i hope that answers your question yeah let me let me give you a proposed rule and see what you think about it so so in our previous cases on adverse effect we've said something to the effect of that um that the the the petitioner has to show that the attorney did not follow a reasonable strategy is it possible that we should instead be looking at whether the defendant um had followed a reasonable strategy that is that the adverse effect is more focused on whether the defendant you know could have pursued a different strategy and not a specific attorney i think that reading it um putting it that way i think um uh supports more the idea of what i was what is alluding to before in terms of the sixth amendment providing an affirmative right um and i think that that's might be what that's getting at and and i think it makes sense to view it that way especially in a case where there's multiple attorneys all um also arguing on your behalf we haven't mentioned that the trial attorneys also negotiated a plea deal and and Mr. Ochoa rejected that as well so i think in in those circumstances um to i i think it might make sense uh something like that reviewing it that way i i would like to briefly turn back turn back to the conflict of interest side of things um i think the recordings the transcripts of the recordings that were produced uh in Colombia that were provided by Mr. Ochoa affirmatively rejects that's the first transcript but the second transcript involves a lot of talk by Mr. Bergenzoli with Perez and tacit acquiescence right i think that that second transcript should be read in conjunction with with the first one i think that seems that seems unrealistic when reviewing the allegations in the light most favorable to the movement because you've got one meeting that doesn't involve Bergenzoli where Mr. Perez i agree with you appears to be saying you've got to cooperate truthfully it's not going to be a matter of payment but then you've got a subsequent meeting where Mr. Bergenzoli is pushing the program and Mr. Perez doesn't ever correct which for an unsophisticated client who's not American doesn't understand our legal system could just mean this American lawyer agrees i i think that as i said my my reading is that it should be it should be read in conjunction with the first in terms of Mr. Perez already having told Fabio Ochoa's brother so these conversations obviously were with Fabio Ochoa's brother and Bergenzoli and he already had told a few days prior that look you cannot buy your way out of this you cannot pay money i think he made that clear as your honor said as your honor mentioned um and so his his his not repeating that so explicitly in the second not explicitly repeating that in the second one i think should be read in uh in connection with the first Bergenzoli though asked Perez if he was on the right track or not Perez responded i believe so and then he's cut off it's more than just silence isn't it well the well i i think that that's also part of uh an issue with the transcripts themselves especially that second one a lot of it is um and i think it uses the the initials ui that it's unintelligible and so there's a there's large chunks of the transcripts that are unintelligible but right but these gaps were to his benefit not yours right i think that i think that's that that's right your honor i think that it's also important to note that every judge the magistrate judge and the district judge who looked at these same transcripts have found that the interpretation that they do not show mr Perez is that when mr Perez was operating a conflict of interest they've looked at this and they found the same thing and so to conclude for the reasons included in our brief and today has not shown that the district court abused its discretion the magistrate judge and the district judge did not abuse their discretion in determining that there was no conflict of interest or adverse effect because those findings are supported by the record so they didn't abuse their discretion and and uh and for that for those reasons this court should affirm the district court's decision thank you very much thank you your honor with regard to the contesting that that somehow this conflict of interest was resolved years ago they have a law of the case problem which is the 2014 decision it analyzed this the same type of argument i think there's some new twists to it today in 2014 they made the same arguments that oh yeah this was handled before this court rejected that and and it it has been you know they didn't contest it again in the district court it was not resolved before whatever hearing they're talking about magistrate turnoff holding at some point in time did not have to do with this issue with whether the the participation of this lawyer in this extortionate program caused ruffin v kemp prejudice they the other what do we do with the problem of multiple attorneys and the adverse effect uh tests as uh judge pressure was my glib answer your honor is hold an evidentiary hearing i mean that's my glib answer and i think that i think that again you look at the cases they rely on peg joe peg it was a well known case you know stoia they rely on whenever so any defendant who has multiple lawyers if one of them has a conflict we're always going to end up in evidentiary hearing land in 2255 any any in any case where there is a really strong doubt that whether they had uh again the focus in stoia was you had divided up the work in stoia so i will the judge of the i think seven circuit saying yeah if if if we can find that yeah the lawyer that was responsible for pre-trial motions fell down on the job then we will find uh a prejudice but we find that there was another lawyer that came in that handled the pre-trial motions perfectly and so it's it's it's case specific and it's not isn't that what what the record shows mr quinone was doing when he met with miss van vliet and mr ryan it doesn't the the offer that there's never an offer he's he never requests an offer they never make an offer didn't they say come in and give a full proffer and what does that mean in our business full proffer plea and cooperate right it is yes but it's not what we're talking about here every when we talk when we're talking about trying to convince somebody who hasn't been extradited yet to come here all of the all of the discussions were about sentence limitation and so he doesn't even seek that but that's in october of 2000 this that's and the although there's there's been a citation a reference today to an affidavit by mr ryan saying that mr quinone was working on the case back in august i did not see that argument in the government's brief i didn't see that argument below i mean the notion that quinone they didn't present any affidavit by quinone quinone comes in only into the case with regard to three months after van vliet had already told the agents to shut down the program the same this is a very serious problem here van vliet is running the show and fleet is the one who's concerned about it quinone comes in it's already a big problem that in and of itself shows that they're not negotiating he's just talking about this issue in relation to extradition nothing in this case distinguishes ruffin v kemp because i mean the time periods are not materially different in ruffin v kemp it is as if conflict council came in because once the other defendants stopped plea negotiations then there was no point in you know they were both they were both in equal positions there was an end to the conflict in ruffin it happened to be with one attorney there still was an end to the conflict i think the decision in ruffin is so important it is more important that the court maintain is there any allegation in ruffin that mr ruffin had said that he was innocent and had no operation to give no but again their emphasis on a public relations campaign in columbia i mean it's not a public relations campaign it was in your 2255 it's it's alleged in the 2255 itself as as a post-trial claim we made there maybe there was an argument that the case was not proven i believe with a public relations campaign in columbia to be denied the rights of the sixth amendment because you engage in a public relations campaign in columbia doesn't it doesn't add up to me he he did the reason he's got perez in front of him is to try to make a deal the problem is it's 30 million dollars too much or it's 20 million dollars too much you know it says on page 95 of of the 2255 once movement was arrested in columbia and received a copy of the extradition affidavits he vehemently argued that the information concerning him was inaccurate and totally false he circulated a pamphlet entitled soy inocente i am innocent that described how agent crane had misstated and lied about the content of their conversations that had been intercepted in order to create evidence against him and to have him extradited and he communicated this to his attorneys jose quinone and subsequently to roy black yes and that is all true that was all validated by the record that he was innocent he was innocent of the extradition affidavit that's the whole point you're trying to fight the extradition at that point he was innocent of the extradition affidavit but that is from a defense standpoint that was his that was his position of greatest leverage this position this point before they cure their extradition warrant that is his position at the point of greatest leverage there's ultimately an evidence you're hearing is the only way to get to the bottom of this case thank you okay thank you sir thank you uh mr we will uh be in recess until uh i think that the easiest thing to do is to do it until the top of the hour at um at 10 o'clock